SUNSHINE REHAB SERVICES, INC.
and ZIA RAHMAN,

       Plaintiffs,

                                    Case No: 09-13605

v.

                                    Hon. Gerald E. Rosen

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES and F. GERARD
HEINAUER, Director, United States Citizenship
and Immigration Services, Nebraska Service Center,

       Defendants.

_____/

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
## DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____ August 20, 2010 _____

PRESENT:  Honorable Gerald E. Rosen
               Chief Judge, United States District Court

## I.  INTRODUCTION

In this action, commenced in this Court on September 11, 2009, Plaintiff Sunshine Rehab

Services, Inc. ("Sunshine Rehab") and one of its employees, Plaintiff Zia Rahman, challenge the

decision of the Defendant United States Citizenship and Immigration Services ("USCIS") to

deny Sunshine Rehab's I-140 Immigrant Petition for Alien Worker.  In the challenged decision,

the Defendant agency denied Sunshine Rehab's request to classify Mr. Rahman as a

"professional" under § 203(b)(3)(A)(ii) of the Immigration and Nationality Act ("INA"), 8

U.S.C. § 1153(b)(3)(A)(ii), so that he could then be placed into a position previously certified by

·

the United States Department of Labor as eligible for filling by an alien worker. This Court's subject matter jurisdiction rests upon Plaintiffs' request for judicial review of the USCIS's adverse decision under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq*.

Presently before the Court are the parties' cross-motions for summary judgment. In their motion, Plaintiffs argue that the USCIS arbitrarily and capriciously denied Sunshine Rehab's request for classification of Mr. Rahman as a "professional," where Plaintiffs submitted sufficient evidence to the Defendant agency to establish, at least in their view, that Mr. Rahman possesses the foreign equivalent of a U.S. baccalaureate degree. Plaintiffs further assert that the USCIS abused its discretion by denying a motion to reopen and reconsider its initial decision in light of new evidence of this purported equivalency. Finally, in a new argument advanced in their submissions to this Court, but not raised during the underlying administrative proceedings, Plaintiffs claim that Mr. Rahman was eligible for classification as a "skilled worker," if not as a "professional," and they contend that the Defendant agency erred by failing to consider this possibility.

In their cross-motion, however, Defendants contend that the USCIS's decision fully comports with the plain language of INA § 203(b)(3)(A) and its implementing regulations, which they view as mandating a U.S. baccalaureate degree or a foreign degree that, standing alone and without consideration of any additional training or experience, is equivalent to a U.S. baccalaureate degree. In Defendants' view, the materials submitted by Plaintiffs during the administrative process do not establish the requisite foreign equivalent of a U.S. baccalaureate degree that would qualify Mr. Rahman as a "professional." In addition, Defendants contend that Plaintiffs waived judicial review of their "skilled worker" argument by failing to request this

classification during the administrative process, whether in their initial petition or in their motion to reopen and reconsider the USCIS's decision.

These cross-motions have been fully briefed by the parties. Having reviewed the parties' briefs and their accompanying exhibits, as well as the administrative record, the Court finds that the relevant facts, allegations, and legal arguments are sufficiently presented in these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide the parties' cross-motions "on the briefs." See Local Rule 7.1(f)(2), Eastern District of Michigan. This opinion and order sets forth the Court's rulings on these motions.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The process for a U.S. employer to secure the necessary approval to employ an alien worker involves two administrative agencies, the United States Department of Labor ("DOL") and the United States Citizenship and Immigration Services ("USCIS"). First, pursuant to 8 U.S.C. § 1182(a)(5)(A), the employer must demonstrate to the DOL that no U.S. worker is available to fill the position and that, by filling the position with an alien worker, the wages and working conditions of similarly employed domestic workers are not adversely affected. The employer uses ETA Form 9089, Application for Permanent Employment Certification, to identify the minimum education level, training, and experience required for the position, and to document the efforts made to find an available U.S. worker.[1] Finally, the employer identifies the qualified alien it seeks to fill the vacancy. Upon approval, the DOL certifies the position.

Once the employer receives this labor certification, it must petition the USCIS to fill the certified position with the named alien. The employer uses Form I-140, Immigrant Petition for

---

[1]This form, ETA 9089, replaced ETA Form 750 in 2005. Among other changes, the new form added a specific question inquiring whether there is an alternate combination of education and experience that the employer would accept in place of the minimum education requirements.

.

Alien Worker, to provide general information about the alien. The form provides a checklist of options to characterize the alien's worker status and asks the employer to choose one. One option, box "e," describes the alien as "[a] professional (at a minimum, possessing a bachelor's degree or a foreign degree equivalent to a U.S. bachelor's degree) or a skilled worker (requiring at least two years of specialized training or experience)." In deciding whether to approve a Form I-140 petition, the USCIS evaluates all supporting evidence provided on behalf of the alien in accordance with 8 U.S.C. § 1153(b)(3), and determines whether the identified alien worker meets the requirements of the employer's position as certified by the DOL.

**A.      Plaintiff Sunshine Rehab's Labor Certification Through the DOL**

The relevant facts of the case are undisputed, and are reflected in the administrative record ("A.R.") filed with the Court on November 23, 2009. On October 12, 2007, Plaintiff Sunshine Rehab Services, Inc. ("Sunshine Rehab," or "the employer") sought the requisite certification to employ an alien worker in an orthotist position[2] by filing an ETA Form 9089, Application for Permanent Employment Certification, with the DOL. (A.R. at 6-18.) On this form, where an employer is asked the minimum level of education required (question H.4), Sunshine Rehab checked the box for a "Bachelor's" degree. (*Id.* at 7.) Where an employer is asked if there is "an alternate combination of education and experience that is acceptable" (question H.8), Sunshine Rehab checked "No." (*Id.* at 8.) Where an employer is asked if this application is for a professional occupation, other than a college or university teacher (question I.a.1), Sunshine Rehab checked "Yes." (*Id.* at 9.) In section I.d, Sunshine Rehab provided details of its professional recruitment effort in support of its application for a professional

---

[2] An orthotist is an orthotic technician who measures and formulates the supportive devices prescribed by a physician for patients with disabling conditions of limbs, spine, or absence of limbs.

.

occupation.  (*Id.* at 10.)  According to the information provided in this section, prior to filing ETA Form 9089, Sunshine Rehab advertised this orthotist position in a Detroit newspaper twice in June 2007, and undertook additional recruiting efforts from May to October 2007.  (*Id.*)

Next, Sunshine Rehab identified Plaintiff Zia Rahman as the alien candidate qualifying for the position, checking "Bachelor's " as the highest level of education achieved relevant to the requested occupation (question J.11).  (*Id.*)  Consistent with its response to the earlier question H.8, Sunshine Rehab checked the "N/A" box in response to the question (question J.19) whether the identified alien worker possessed the alternate education and experience deemed acceptable to the employer.  (*Id.* at 11.)  Finally, Sunshine Rehab's president signed section N of ETA 9089, declaring that no qualified U.S. workers were available for the position at issue.  (*Id.* at 14.)

The DOL approved Sunshine Rehab's ETA Form 9089 on October 31, 2007, certifying that there were not sufficient available U.S. workers to meet the employer's requirements for the position offered, and that the named alien's employment in the certified position would not adversely affect the wages and working conditions of similarly employed U.S. workers.  (*Id.*)

**B.**      **Plaintiff Sunshine Rehab's Petition to the USCIS on Behalf of Plaintiff Rahman**

On January 4, 2008, Sunshine Rehab filed a Form I-140, Immigrant Petition for Alien Worker, with the Defendant USCIS, identifying Plaintiff Rahman as the intended beneficiary of this petition.  (A.R. at 1-4.)  In Part 2, where an employer is asked to characterize the alien beneficiary, Sunshine Rehab checked box "e," indicating that Mr. Rahman was "[a] professional (at a minimum, possessing a bachelor's degree or a foreign degree equivalent to a U.S. bachelor's degree) or a skilled worker (requiring at least two years of specialized training or experience)."  (*Id.* at 2.)

.

Accompanying this I-140 petition, Plaintiffs submitted a copy of Mr. Rahman's educational record. (*Id.* at 35, 38-40.) In addition to two letters of recommendation, this record included a diploma awarding Mr. Rahman a Bachelor of Prosthetics and Orthotics (Orthopaedic Technology) from the University of Peshawar[3] on January 26, 2001, and an Internship Certificate awarded on December 28, 2001. (*Id.* at 35-36.) According to the Internship Certificate, Mr. Rahman received his bachelor's degree in the 1998-2000 session, and then worked as an "Internship fellow" from February 2001 to January 2002. (*Id.* at 36.) The academic record submitted to the USCIS also included a certificate reflecting that Mr. Rahman had spent a total of 6345 "clock hours" on his degree program and internship, (*id.* at 37), and transcripts for his coursework in 1998, 1999, and 2000, (*id.* at 38-40). Finally, Plaintiffs provided a "Credential Evaluation Report" prepared by World Education Services ("WES"), which characterized the U.S. equivalency of Mr. Rahman's degree as a "Bachelor's degree in prosthetics and orthotics from a regionally accredited institution," and described his program as lasting "[f]our years" and as "includ[ing] a one-year internship." (*Id.* at 32.)

**C.      The USCIS's Evaluation and Denial of Sunshine Rehab's I-140 Petition**

On March 16, 2009, Defendant F. Gerard Heinauer, director of the USCIS's Nebraska Service Center, requested that Sunshine Rehab provide additional information in support of its I-140 petition. (*Id.* at 44-45.) Specifically, Sunshine Rehab was advised that the "[e]vidence in the record indicates that the beneficiary's Bachelor of Science degree is only equivalent to three years of post-secondary education." (*Id.* at 45.) The company was invited to "[s]ubmit evidence that the alien obtained the required four-year bachelor's degree before October 12, 2007," and

---

[3] The University of Peshawar is located in Peshawar, Pakistan.

.

was told that "[e]vidence of education must be in the form of an official record showing the dates of attendance, area of concentration of study, and date of degree award, if any." (*Id.*)

In response to this request, Plaintiffs resubmitted Mr. Rahman's academic record and provided various additional materials in support of their claim that Mr. Rahman had achieved the foreign equivalent of a U.S. bachelor's degree. These materials included (i) a letter from the managing director of the Pakistan Institute of Prosthetic and Orthotic Sciences ("PIPOS") stating that Mr. Rahman had "successfully completed a full time four year course in the field of prosthetics and orthotics consisting of three years [of] classroom studies . . . and one year [of] professional internship," (*id.* at 59), (ii) a "Credentials Evaluation Report" from Career Consulting International declaring that Mr. Rahman's education was equivalent to a U.S. bachelor of science degree in orthopedic technology (prosthetics or orthotics) from a regionally accredited U.S. college or university, (*id.* at 60-63), (iii) an education evaluation from Marquess Educational Consultants opining that the Bachelor of Prosthetics and Orthotics awarded to Mr. Rahman "is a four-year full-time degree program consisting of classroom study and a professional internship," and that the number of "clock hours" reflected in Mr. Rahman's academic records "amply exceeds . . . the minimum requirement for earning a bachelor's degree in the United States," (*id.* at 64-73), (iv) an article by the United Nations Economic and Social Commission for Asia and the Pacific identifying the University of Peshawar as "offer[ing] a four-year course leading to a Bachelor's degree in prosthetics and orthotics," (*id.* at 74-85), and (v) printouts of three international websites further describing the four-year program offered by PIPOS in Peshawar, (*id.* at 86-90).

On May 19, 2009, the USCIS issued a final decision denying Sunshine Rehab's I-140 petition on the ground that beneficiary Zia Rahman did not meet the minimum requirements for

.

the available position described in the company's Form ETA 9089. (*Id.* at 92-94.) Director

Heinauer authored this decision, stating:

> The record shows that the alien beneficiary received a three year bachelor's of arts degree from the University of Peshawar in Pakistan with an additional year spent as a professional intern. It is noted that bachelor's programs in the United States generally involve four years of education. The record does not demonstrate that the beneficiary's three years of post-secondary education is equivalent to a U.S. Bachelor's Degree.

(*Id.* at 93.) In reaching this decision, Defendant Heinauer relied in part on the Electronic

Database for Global Education ("EDGE"), explaining that the USCIS had accessed and reviewed

the credentials for Pakistan contained in this database, and that this listing characterized Mr.

Rahman's bachelor of arts degree as comparable to a two or three year course of university study

in the United States. (*Id.*)

**D.      Plaintiffs' Motion to Reopen and Reconsider the USCIS Decision**

On June 19, 2009, Plaintiffs filed a motion to reopen and reconsider the USCIS's

decision denying their I-140 petition. (*Id.* at 96-100.) In support of this motion, Plaintiffs

challenged the USCIS's reasoning that an internship is not education, citing evidence that some

U.S. academic institutions award credit toward a degree for internships. (*Id.* at 98.) Plaintiffs

further asserted that the USCIS had erred in characterizing Mr. Rahman's degree as a "bachelor

of arts" when consulting the EDGE database, when in fact the correct designation was a

"bachelor of prosthetics and orthotics." (*Id.* at 99.) Finally, Plaintiffs challenged the USCIS's

decision for its failure to credit the education evaluations of three different agencies concluding

that Mr. Rahman had achieved the foreign equivalent of a U.S. baccalaureate degree, and they

submitted a fourth evaluation to the same effect. (*Id.* at 99, 104-05.)

The USCIS denied Plaintiffs' motion to reopen or reconsider in a decision dated July 21,

2009. (*Id.* at 107-08.) In support of this decision, the USCIS stated that Plaintiffs' motion

.

"neither provides new evidence, provides precedent decisions to consider, nor establishes that the decision was incorrect based upon the evidence of record at the time."  (*Id.* at 107.)  Plaintiffs then commenced this action on September 11, 2009, seeking judicial review of the Defendant USCIS's decision to deny Sunshine Rehab's I-140 petition on behalf of Mr. Rahman.

## III.  <u>ANALYSIS</u>

**A.      The Standards Governing the Parties' Cross-Motions for Summary Judgment**

While the parties' cross-motions have been brought under Federal Rule of Civil Procedure 56, this case is governed by the more specific standards for judicial review of final agency action, as prescribed under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.  See Sierra Club v. Slater,* 120 F.3d 623, 632 (6th Cir. 1997); *Frizelle v. Slater,* 111 F.3d 172, 176 (D.C. Cir. 1997).  The APA directs the courts to set aside agency action where it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A);  *see also Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512, 114 S. Ct. 2381, 2386 (1994); *Sierra Club,* 120 F.3d at 632.  Alternatively, an agency action may be set aside if it lies outside the agency's "statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(C), or where its findings are "unsupported by substantial evidence," 5 U.S.C. § 706(2)(E).

Next, the USCIS's denial of a motion to reopen or reconsider is reviewed under an abuse of discretion standard.  *See Ashki v. I.N.S.*, 233 F.3d 913, 917 (6th Cir. 2000).  The standards governing this exercise of discretion, in turn, are set forth at 8 C.F.R. § 103.5, which requires either new facts or a showing that the agency's decision was incorrect based on the evidence of record at the time it was issued.

.

"The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Kroger Co. v. Regional Airport Authority of Louisville & Jefferson County,* 286 F.3d 382, 387 (6th Cir. 2002) (internal quotation marks and citation omitted). In this case, then, the proper disposition of the parties' cross-motions turns upon the purely legal question whether, in light of the existing administrative record, the USCIS's decision passes muster under the applicable APA standards. The Court now turns to this issue.

**B.      The USCIS's Decision May Not Be Set Aside on Any Grounds Set Forth in the APA.**

In their several submissions to the Court, Plaintiffs forcefully repeat the same two substantive arguments. First, they contend that the administrative record shows that Plaintiff Zia Rahman meets the qualifications for a "professional" worker as certified by the Department of Labor in approving employer Sunshine Rehab's ETA Form 9089, and as defined under 8 U.S.C. § 1153(b)(3)(A)(ii). Alternatively, Plaintiffs argue for the first time before this Court that even if Mr. Rahman might fail to qualify as a professional, the USCIS should have considered whether he could properly be characterized as a "skilled worker" under 8 U.S.C. § 1153(b)(3)(A)(i), as the agency purportedly has done in analogous cases. The Court considers each of these arguments in turn.

In considering whether the Defendant USCIS arbitrarily and capriciously failed to credit the proofs offered by Plaintiffs to establish Mr. Rahman's status as a "professional," the starting point is the statutory language of INA § 203(b)(3)(A)(ii), 8 U.S.C. § 1153(b)(3)(A)(ii), which defines "[p]rofessionals" as "[q]ualified immigrants who hold baccalaureate degrees and who are members of the professions." The statute's implementing regulation similarly provides that "[p]rofessional means a qualified alien who holds at least a United States baccalaureate degree or

.

a foreign equivalent degree and who is a member of the professions." 8 C.F.R. § 204.5(l)(2).

This regulation further specifies the evidence that an employer must produce in order to

demonstrate that an alien worker qualifies as a "professional":

> (C) Professionals. If the petition is for a professional, the petition must be accompanied by evidence that the alien holds a United States baccalaureate degree or a foreign equivalent degree and by evidence that the alien is a member of the professions. Evidence of a baccalaureate degree shall be in the form of an official college or university record showing the date the baccalaureate degree was awarded and the area of concentration of study.

8 C.F.R. § 204.5(l)(3)(ii)(C).

In this case, then, the question whether Mr. Rahman qualifies as a "professional" under

the statute and corresponding regulation turns upon whether his "Bachelor of Prosthetics and

Orthotics" degree awarded by the University of Peshawar is the foreign equivalent of a U.S.

baccalaureate degree. In an effort to make this requisite showing, and to meet the burden

imposed by the above-quoted regulation, Plaintiffs submitted (i) records of his studies and

related activities at the University of Peshawar and its affiliate, the Pakistan Institute of

Prosthetic and Orthotic Sciences ("PIPOS"), (ii) "credentials evaluation reports" from three

agencies concluding that Mr. Rahman's degree was the foreign equivalent of a U.S. bachelor's

degree, and (iii) other materials describing PIPOS's four-year program. Despite this evidence,

the USCIS concluded that Mr. Rahman lacked the foreign equivalent of a U.S. baccalaureate

degree, reasoning that his program of study in Pakistan was more properly characterized as

"three years of post-secondary education" at the University of Peshawar and "an additional year

spent as a professional intern." (A.R. at 93.)

In challenging this agency decision as arbitrary and capricious, Plaintiffs first assert that

the USCIS improperly compartmentalized Mr. Rahman's program of study into three years of

.

coursework and a separate one-year internship, despite the evidence submitted by Plaintiffs

describing the PIPOS program as spanning four years and as comparable to programs at U.S.

academic institutions that lead to an award of a bachelor's degree.  In response, Defendants

contend that there were permissible grounds, in both the law and the record, for viewing Mr.

Rahman's credentials as evidencing an award of a three-year degree followed by a one-year

internship.  As explained below, the Court finds that Defendants have the better of the argument

on this point.

First, Defendants have identified a sufficient basis in the pertinent regulations for

considering Mr. Rahman's coursework alone, and not his subsequent internship, in deciding

whether his degree from the University of Peshawar was equivalent to a U.S. baccalaureate

degree.  In specifying the evidence necessary to attain "professional" status, the governing

regulation calls for the submission of "an official college or university record showing the date

the baccalaureate degree was awarded and the area of concentration of study."  8 C.F.R. §

204.5(l)(3)(ii)(C).  This supports Defendants' view that the test for "professional" status should

rest solely upon an alien worker's academic record, and cannot be satisfied through a

combination of education *plus* additional training or experience.  In contrast, Defendants point to

at least one other regulation that *does* permit an alien worker to satisfy a degree requirement by

submitting evidence of "education, specialized training, and/or progressively responsible

experience that is equivalent to completion of a United States baccalaureate or higher degree."  8

C.F.R. § 214.2(h)(4)(iii)(C)(4) (setting forth the requirements to qualify for "specialty

occupation" status).  This Court "must give substantial deference to an agency's interpretation of

its own regulations," *Thomas Jefferson University,* 512 U.S. at 512, 114 S. Ct. at 2386,

.

particularly where this interpretation is supported by reasoned distinctions drawn between the

language of the regulation at issue and another regulation governing analogous subject matter.

Moreover, Defendants point out that the administrative history of the implementing

regulation lends further support to the USCIS's decision to separately consider Mr. Rahman's

three years of coursework and his subsequent one-year internship. When the final rule set forth

at 8 C.F.R. § 204.5 was published in the Federal Register back in 1991, the agency received a

number of comments "object[ing] to the requirement that an alien actually possess a

baccalaureate degree (or a foreign equivalent degree)," and suggesting that an alien should be

permitted to qualify for "professional" status "through experience in the profession." 56 Fed.

Reg. 60,897, 60,900 (Nov. 29, 1991). The agency declined to change its rule, however,

explaining that "the language of the statute states that the professional must have a

baccalaureate." *Id.* Again, this supports the USCIS's analysis in this case, as it reflects the

agency's explicit contemplation and rejection of the proposition that an alien worker may rely

upon a combination of education and subsequent training or experience to establish the foreign

equivalent of a U.S. baccalaureate degree.

Next, against this backdrop of a reasoned and permissible construction of the applicable

statutory language and implementing regulation, the Court finds that the USCIS's assessment of

the evidentiary record was supported by substantial evidence. Mr. Rahman's diploma from the

University of Peshawar reflects that he was awarded his "Bachelor of Prosthetics & Orthotics"

degree in January of 2001, upon passing a "prescribed examination held in December 2000."

(A.R. at 35.) At this point, the record discloses that he had completed three years of coursework

spanning the years 1998-2000. (*See id.* at 38-40.) Mr. Rahman then completed a one-year

internship *after* this three-year course of study and *after* receiving his bachelor's degree, as

.

reflected in an "Internship Certificate" from PIPOS stating that Mr. Rahman had received his bachelor's degree during the "1998-2000" session and that he "worked as an Internship fellow" from February 2001 to January 2002. (*Id.* at 36; *see also id.* at 59 (letter from PIPOS's managing director describing Mr. Rahman's four-year program as "consisting of three years [of] classroom studies . . . and one year [of] professional internship").) Under this record, the USCIS permissibly could have viewed Mr. Rahman's internship as professional training subsequent to his attainment of a three-year bachelor's degree. It follows, under the agency's construction of INA § 203(b)(3)(A)(ii) and its implementing regulation, that the USCIS need not have considered Mr. Rahman's three years of coursework and one-year internship in combination in determining whether he held the foreign equivalent of a U.S. baccalaureate degree.

To be sure, Plaintiffs submitted evidence to the USCIS supporting their view that Mr. Rahman had completed a four-year program that was equivalent to a U.S. bachelor's degree. In particular, Plaintiffs produced reports from three different agencies concluding that Mr. Rahman's credentials and accomplishments during his four-year program of classroom study and a professional internship met or exceeded the requirements for earning a bachelor's degree from a regionally accredited U.S. college or university. Yet, while these outside agencies were free to consider Mr. Rahman's coursework and internship in combination in comparing his overall program of study and training to the bachelor's degree programs offered by U.S. postsecondary institutions, the USCIS need not have done so, where this agency has interpreted its regulations as distinguishing between the education leading to a degree and the additional training or experience that follows the award of this degree. Viewing the administrative record in light of the pertinent statutory language and implementing regulation as the USCIS has interpreted them – an interpretation which, as noted, is entitled to deference – the Court finds that this record

.

contains substantial evidence upon which the USCIS could have permissibly concluded that Mr. Rahman had earned a three-year degree that was not equivalent to a U.S. baccalaureate degree.

Alternatively, even accepting that Mr. Rahman's degree rested upon only three years of coursework, and not his additional one-year internship, Plaintiffs argue that the amount of study undertaken by Mr. Rahman during these three years was comparable to the amount of coursework that results in an award of a bachelor's degree at a U.S. postsecondary institution. Plaintiffs point, for example, to a report prepared by Marquess Educational Consultants which notes that Mr. Rahman logged 3,145 "clock hours" in coursework leading to his degree, and opines that "[t]his figure amply exceeds the 1,800 clock hours which is the minimum requirement for earning a bachelor's degree in the United States." (A.R. at 64; *see also id.* at 56 (summarizing the "clock hours" spent by Mr. Rahman in his coursework and his internship).) Plaintiffs fault the USCIS for "offer[ing] no explanation at all as to why a program which provides over 170% of the classroom time [of] a U.S. baccalaureate program should not be considered at least its foreign equivalent." (Plaintiffs' Motion for Summary Judgment, Br. in Support at 15.)

Once again, however, while the USCIS certainly could have elected to give greater weight to this evidence, its contrary conclusion must be upheld so long as it rests upon substantial evidence elsewhere in the record. In its decision denying Sunshine Rehab's I-140 petition, the USCIS cited the Electronic Database for Global Education ("EDGE"), stating that a review of this database revealed that the degree received by Mr. Rahman "represents attainment of a level of education comparable to 2 to 3 years of university study in the United States." (A.R. at 93.) The USCIS was entitled to prefer the information culled from the EDGE database over the outside agency report proffered by Plaintiffs. *See Allentown Mack Sales & Service, Inc.*

15

.

*v. N.L.R.B.,* 522 U.S. 359, 377, 118 S. Ct. 818, 828 (1998) ("The 'substantial evidence' test . . . gives the agency the benefit of the doubt, since it requires not the degree of evidence which satisfies the *court* that the requisite fact exists, but merely the degree which *could* satisfy a reasonable factfinder.").  To be sure, the Court might well have weighed this record differently, and would have preferred that the USCIS conduct a more rigorous comparison of Mr. Rahman's academic record versus the requirements of a typical U.S. bachelor's degree program.  Indeed, the Court is inclined to view the agency's assessment of Mr. Rahman's degree program as resting upon a rather hyper-technical reading of the record and the pertinent regulations.  Nonetheless, despite these reservations, the Court cannot say that the USCIS's resolution of this matter was arbitrary, capricious, or an abuse of the agency's discretion.

Accordingly, having found no basis to disturb the USCIS's initial decision, the Court turns to Plaintiffs' challenge to the agency's denial of their motion to reopen or reconsider this decision.  Plaintiffs claim that the USCIS's denial of this motion consisted of mere "boilerplate recitations of the law" and lacked "any explanation" of the basis for the agency's action.  (Plaintiffs' Motion for Summary Judgment, Br. in Support at 21.)  Under the pertinent regulation, however, Plaintiffs were required to support their motion with either "new facts" or a showing that the agency's initial decision "was incorrect based on the evidence of record at the time of" this decision.  8 C.F.R. § 103.5(a)(2)-(3).  The only new evidence accompanying Plaintiffs' motion was a report from a fourth outside agency which, like the three reports Plaintiffs had previously provided, opined that Mr. Rahman's program of study was the foreign equivalent of a U.S. bachelor's degree.  As Defendants point out, this evidence was not qualitatively different from the three reports already in the record, but instead merely reiterated the conclusion reached by three other outside agencies.  If the USCIS properly could have

.

discounted the initial three reports – and the Court already has explained that this was permissible – the agency surely did not abuse its discretion in concluding that a fourth such report did not warrant a different conclusion. Neither did the USCIS abuse its discretion in determining that Plaintiffs had failed to identify a defect in the agency's initial decision, where Plaintiffs merely reiterated the arguments addressed above: namely, (i) that Mr. Rahman's coursework and internship should be viewed as a single four-year program of study leading to his degree, and (ii) that the agency erred in giving more weight to the EDGE database than to the outside agency evaluations submitted by Plaintiffs.

Finally, Plaintiffs advance a new argument before the Court that they did not raise in the course of the administrative proceedings. In particular, Plaintiffs contend that once the USCIS concluded that Mr. Rahman did not qualify as a "professional," the agency should have proceeded to inquire whether he met the statutory and regulatory criteria for classification as a "skilled worker." As Plaintiffs observe, part 2, box "e" of the I-140 petition encompasses both professionals and skilled workers, (*see* A.R. at 2), potentially presenting the alien worker who is the subject of the petition as a candidate for either sort of position. It follows, in Plaintiffs' view, that when Sunshine Rehab checked this box in its I-140 petition, this triggered the USCIS's obligation to determine whether Mr. Rahman qualified for either designation. In support of this proposition, Plaintiffs point to prior administrative decisions in which the USCIS did, in fact, elect to conduct this broader inquiry, and the agency itself evidently does not deny that it may do so under the appropriate circumstances, (*see* Defendants' Sur-Reply Br. at 3).

Yet, even accepting that the USCIS had the discretion to proceed in this fashion in determining whether to grant or deny Sunshine Rehab's I-140 petition, the Court cannot say, under the record presented here, that the agency acted arbitrarily or capriciously in declining to

17

.

do so.  As discussed earlier, in an ETA Form 9089 filed with the DOL, Sunshine Rehab

expressly stated that the minimum level of education required to qualify for the orthotist position

at issue was a bachelor's degree.  (A.R. at 7.)  Moreover, when asked on this form whether it

would accept an alternate combination of education and experience, Sunshine Rehab responded

"No."  (*Id.* at 8.)[4]  Similarly, in the portion of this form where the employer identifies the alien

worker who is the candidate for the position at issue, Sunshine Rehab identified Mr. Rahman as

possessing a bachelor's degree, and it checked the "N/A" box in response to the question

whether this alien possessed an "alternate combination of education and experience" deemed

acceptable by the employer.  (*Id.* at 10-11.)

　　　　In light of these statements in the ETA Form 9089 submitted by Sunshine Rehab, it was

neither arbitrary nor capricious for the USCIS to conclude that this employer did not intend to fill

its orthotist position with a skilled worker, but instead had determined that only a professional

with a bachelor's degree would be eligible to fill this position.  As noted by Defendants, the

USCIS's evaluation of an I-140 petition is confined to the inquiry whether the identified alien

worker satisfies the minimum job requirements set forth in the labor certification secured by the

employer from the DOL.  *See* 8 C.F.R. § 204.5(l)(3)(i) (requiring that this labor certification be

included among the documentation submitted in support of an I-140 petition).  In seeking this

labor certification, Sunshine Rehab expressly advised the DOL that a bachelor's degree was the

minimum level of education required for the orthotist position at issue, and that no alternate

combination of education and experience would suffice.  These same requirements presumably

were conveyed in Sunshine Rehab's advertisements and other efforts to recruit a U.S. worker for

_____

[4]As noted earlier, ETA Form 9089 replaced a prior form that did not inquire whether the employer would accept an alternate combination of education and experience as a substitute for an otherwise-required level of education.

this position.  Finally, the labor certification issued by the DOL necessarily was limited to the job requirements as Sunshine Rehab had specified them, and cannot be viewed as reflecting the DOL's determination (or even consideration) whether there were insufficient U.S. workers with "skilled worker" (as opposed to "professional") qualifications to fill the orthotist position.  Under these circumstances – which distinguish this case from the administrative rulings upon which Plaintiffs rely – the USCIS's failure to consider whether Mr. Rahman could be classified as a "skilled worker" was not arbitrary or capricious.

To be sure, Sunshine Rehab now insists before this Court that the USCIS misconstrued its intention, and that it did not mean to limit its orthotist position solely to workers who qualify as "professionals" under the agency's regulations.  The Court certainly is sympathetic to this position, and fully appreciates the perceived unfairness – to say nothing of the severe consequences to Mr. Rahman – of the USCIS's refusal to consider whether Mr. Rahman would qualify under the "skilled worker" classification that Sunshine Rehab now insists is sufficient. Unfortunately, Sunshine Rehab's change from the stance taken in its administrative submissions – including, most significantly, its DOL paperwork in which it sought only "professional" certification – comes too late in the day to provide a basis for overturning the USCIS's decision. Had Sunshine Rehab advanced its "skilled worker" argument in its motion to reopen or reconsider, or had it pursued an available administrative appeal from the USCIS's decision and raised this issue in that forum, the Defendant agency would have had an opportunity, in the course of the administrative proceedings, to conduct the sort of inquiry that,  as Plaintiffs note, the agency has performed in other cases – namely, to ask whether the alien worker identified in an employer's I-140 petition might qualify as *either* a professional or a skilled worker.  In this case, however, Plaintiffs elected to bypass the administrative appeals process, and to instead

19

.

proceed directly to this Court and seek judicial review of the USCIS's determination that Mr. Rahman did not qualify as a professional. Simply stated, nowhere in the administrative process did Plaintiffs ever contend that Mr. Rahman should be eligible for classification as a skilled worker. (*See* A.R. at 98-100 (Plaintiffs' Motion to Reopen or Reconsider, in which they challenged only the determination that Mr. Rahman's degree was not the foreign equivalent of a U.S. baccalaureate degree).)

Plaintiffs' chosen course of action has a direct impact upon the scope of this Court's review of the USCIS's decision. As Defendants point out, the Sixth Circuit has recognized that "[a] reviewing court may not consider arguments that were not previously raised before an administrative agency under the doctrine of issue exhaustion or the administrative waiver doctrine." *LeBlanc v. E.P.A.,* No. 08-3049, 310 F. App'x 770, 776 (6th Cir. Feb. 12, 2009). Accordingly, because Plaintiffs had an opportunity during the administrative proceedings to request that the USCIS consider whether Mr. Rahman could be classified as a skilled worker, yet failed to do so, the Court finds that they have waived this challenge in the present judicial forum.

.

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' February 26, 2010

motion for summary judgment (docket #17) is GRANTED.  IT IS FURTHER ORDERED that

Plaintiffs' February 23, 2010 motion for summary judgment (docket #16) is DENIED.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  August 20, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on
August 20, 2010, by electronic and/or ordinary mail.

s/Ruth A. Gunther
Case Manager